IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


JOEL BONK,                                      3:11-CV-00637-BR

          Plaintiff,                            OPINION AND ORDER

v.

MICHAEL ASTRUE,
Commissioner of Social
Security,

          Defendant.

BRUCE W. BREWER
419 5th Street,
Oregon City, OR 97045
(503) 722-8833

          Attorneys for Plaintiff

S. AMANDA MARSHALL
United States Attorney
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003


1  - OPINION AND ORDER

**DAVID MORADO**
Regional Chief Counsel
**DAPHNE BANAY**
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900 MS/221A
Seattle, WA  98104-7075
(206) 615-2113

       Attorneys for Defendant

**BROWN, Judge.**

       Plaintiff Joel Bonk seeks judicial review of the Commissioner of Social Security's final decision denying Plaintiff Joel Bonk's November 1, 2006, application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83f, and Plaintiff's March 3, 2007, application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-434.  This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g).

       For the reasons that follow, the Court **REVERSES** the final decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for the immediate calculation and payment of SSI and DIB for the period from June 27, 2006, to December 31, 2007.

## ADMINISTRATIVE HISTORY

       Plaintiff alleges in his SSI and DIB applications that he has been disabled since June 27, 2006, because of Schizoaffective

Disorder and Psychotic Disorder NOS.  Tr. 108-17.

Plaintiff's applications were denied initially and on reconsideration.  Tr. 66-73.  An Administrative Law Judge (ALJ) held an evidentiary hearing on April 24, 2009, at which Plaintiff, Plaintiff's mother, Katherine Eckroth, and vocational expert (VE) testified.  Tr. 14-45.

The ALJ issued a decision on May 12, 2009, in which he found Plaintiff is not disabled and, therefore, is not entitled to either DIB or SSI benefits.  Tr. 53-64.  That decision became the final decision of the Commissioner on March 25, 2011, when the Appeals Council denied Plaintiff's request for review.  Tr. 1-3.

On May 25, 2011, Plaintiff filed his Complaint seeking review of the Commissioner's final decision denying Plaintiff's claims for DIB and SSI.  Plaintiff concedes his condition improved after the ALJ rendered her decision and before the Appeals Council issued its decision on review, but he contends he is entitled to DIB and SSI up to the date of the ALJ's decision.

<u>**BACKGROUND**</u>

I.   <u>**Plaintiff's Testimony.**</u>

On the date of the hearing, Plaintiff was 34 years old. Tr. 19.  He is divorced and does not have a source of income. Tr. 19.  He describes himself as "healthy" although he has "gained 30 lbs in the last couple of years."  Tr. 19.  He lives

3  - OPINION AND ORDER

on a farm with an uncle, receives food stamps, and does not drive. Tr. 19.

Plaintiff completed one year of college. Tr. 20. He last worked full-time for three months in 2006 as a cabinet maker, which required him to be on his feet for 8 hours and lift up to 40 lbs. Tr. 20. He left the job because of stress that "interfered" with his mental health. Tr. 20. Plaintiff worked for three years before that as a punch-press operator for a metal products company, which required him to lift 40 lbs and sit for up to 10 hours. He was let go because of mental health issues. Tr. 20-21. He also worked for approximately one year each as an insulation installer and assembly-line worker. Both jobs required him to lift 45-50 lbs. Tr. 21-22. He left the first of those jobs to seek a higher paying job and the second job because he moved. Tr. 22. Plaintiff also worked full-time as a hod carrier lifting and carrying up to 100 lbs. He left that job because he got "physically worn down." Tr. 23.

Plaintiff states he became unable to work on June 27, 2006, after he suffered a psychotic episode. Tr. 24. He was taken into custody and transferred to Lane County Mental Health. Tr. 24. Plaintiff also has physical problems that prevent him from working. He does not use illegal drugs such as marijuana. Tr. 24. He has been diagnosed with paranoid schizophrenia, bipolar disorder, and depression and suffers from auditory

4 - OPINION AND ORDER

hallucinations.  Tr. 24-25.  He experiences memory difficulties "once every couple of months."  Tr. 26.

Plaintiff's daily activities include reading periodicals discussing schizophrenia 20 minutes a day, watching comedy shows on television for 30 minutes at a time, and listening to music. He feeds the cows, which takes up to 15 minutes per day.  Tr. 26.

Plaintiff takes medication to help him sleep.  Tr. 27.

Plaintiff visits family members every two weeks or so. Tr. 27.  He has a six-year old daughter who lives with her mother.  He doesn't have any contact with the child because he once "tried to hurt his wife . . . during [his] delusional thinking."  Tr. 27-29.

Plaintiff must be reminded to take care of his personal hygiene.  Tr. 27-29.  He does some housekeeping and gardening (vacuuming, laundry, mowing the lawn, and spreading compost). Tr. 28, 34.

Plaintiff often listens to music while wearing a headset because it helps him "cope with the voices" that are "impeding [his] concentration."  He still hears the voices on a daily basis, but they have "gotten better" in that they do not cause him anxiety to the point that he wants to run away and hide or to confront and fight them.  Tr. 31.

Plaintiff occasionally attends sporting events with his mother.  Tr 30.  He attends Mass every Saturday evening and also

5  - OPINION AND ORDER

participates in a schizophrenia recovery group every Thursday. Tr. 30.  He is able to shop for groceries on his own without difficulty, but he plans ahead before he goes out in order to avoid becoming stressed, which would lead to a relapse in his mental health and cause him to hear voices telling him that he is "stupid."  Tr. 33.

## II.  <u>Lay-Witness Testimony</u>.

Plaintiff's mother has lived with him for almost three years.  Tr. 35-36.  She offered the following evidence in hearing testimony and in a Third-Party Function Report.

When Plaintiff was in the sixth or seventh grade, he was not empathetic with people or pets.  Tr. 36-37.

Plaintiff obtained a GED and married.  One evening five years ago, Plaintiff was in an agitated state and chased his wife and baby with a knife.  Tr. 38.  He was arrested, and his mental health "went right downhill."  Tr. 38.

Plaintiff is not using alcohol and drugs now.  Tr. 38.

Plaintiff rises at about 10:00 a.m. each day, but he spends an additional one or two hours in bed during the day before going back to bed at night.  Tr. 165.  Before the onset of his present illness, Plaintiff was able to work.  He "had a hard time" socially, however, and has "difficulty focusing/anxiety."  Tr. 166.  He needs to be reminded to shower and is not motivated to eat.  Tr. 167.  He does his own laundry once a week.  Tr. 167.

Although physically able, he is not motivated to do any house or yard work.  Tr. 168.  Plaintiff is able to shop and does so once or twice a month for personal items.  Tr. 168.  He tries to be responsible in paying his bills, but does not always do so on time.  Tr. 168.

Plaintiff watches a lot of television, but he does not show any interest in anything else except fishing once in a while. Tr. 169.

Plaintiff does not deal with confrontation well, and has difficulty socializing.  He chooses to remain secluded.  Tr. 170.

Plaintiff is physically weaker than he used to be because of inactivity, and he seems to be in a fog mentally.  He has a poor memory and becomes anxious and paranoid easily.  Tr. 170.

Plaintiff does not get along well with authority figures. Tr. 171.  He also does not handle stress or any change in routine well.  Tr. 171.  He is fearful of any change in routine.  Both loud noises and quiet bother him.  Tr. 171.

Since being diagnosed with a mental illness, he has stopped drinking and his "episodic behaviors" have slowed down.  Tr. 172. He acts as if he needs someone to take care of him and does not take any initiative on his own.  Tr. 172.  He is withdrawing more and more from the family.  Tr. 172.  He probably cannot hold down a job because he becomes overwhelmed and cannot remember what was told to him or how to do it.  Tr. 172.

7  - OPINION AND ORDER

## III. **VE's Testimony.**

The VE testified Plaintiff's past relevant work history
included medium, semi-skilled work as a gas-station attendant,
"very heavy" unskilled work as a hod carrier, light
unskilled work as a production assembler, medium skilled work as
an insulation installer, and heavy semi-skilled work as a punch
press operator.  Tr. 41-42.

The VE testified Plaintiff would be unable to perform past
relevant work if it required him to remain on task or to perform
work with an SVP of 1 or 2 with minimal direction and superficial
contact with the general public even if it were limited to simple
low stress, routine, unskilled work without much direction or
intense concentration.  He would, however, be able to perform
medium, unskilled jobs as a hand packager or industrial cleaner
or a light, unskilled job as a motel cleaner.  Tr. 43.  There are
not any jobs that Plaintiff would be able to perform, however, if
he had psychological interruptions that limited his ability to
concentrate for more than two hours and/or to be productive for
one-third of the time.  Tr. 44.


### **STANDARDS**

The initial burden of proof rests on the claimant to
establish disability.  *Ukolov v. Barnhart*, 420 F.3d 1002, 1004
(9th Cir. 2005).  To meet this burden, the claimant must show

his inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Commissioner bears the burden of developing the record.  *Reed v. Massanari*, 270 F.3d 838, 841  (9th Cir. 2001).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g).  *See also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).  "Substantial evidence means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)(internal quotations omitted).

The ALJ is responsible for determining credibility and resolving conflicts and ambiguities in the medical evidence. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision.  *Robbins,* 466 F.3d at 882.  The Commissioner's decision must be upheld even if the evidence is susceptible to more than one rational

interpretation.  *Webb v. Barnhart*, 433 F.3d 683, 689 (9th Cir. 2005).  The court may not substitute its judgment for that of the Commissioner.  *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

**The Regulatory Sequential Evaluation**.

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act.  *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).  *See also* 20 C.F.R. § 416.920; 20 C.F.R. § 404.1520.  Each step is potentially dispositive.

In Step One, a claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity.  *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006).  *See also* 20 C.F.R. § 416.920(a)(4)(I); 20 C.F.R. § 404.1520(a)(4)(I).

In Step Two, a claimant is not disabled if the Commissioner determines the claimant has no medically severe impairment or combination of impairments.  *Stout*, 454 F.3d at 1052.  20 C.F.R. § 416.920(a)(4)(ii); 20 C.F.R. § 404.1620(a)(4)(ii).

In Step Three, the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so

10 - OPINION AND ORDER

severe as to preclude substantial gainful activity.  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. § 416.920(a)(4)(iii); 20 C.F.R. § 416.920(a)(4)(iii).  Criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, he must assess the claimant's residual functional capacity (RFC).  The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations.  20 C.F.R. § 416.920(e); 20 C.F.R. § 1520(e).  *See also* Social Security Ruling (SSR) 96-8p.  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule."  SSR 96-8p, at *1.  In other words, the Social Security Act does not require complete incapacity to be disabled.  *Smolen v. Chater*, 80 F.3d 1273, 1284 n.7 (9th Cir. 1996).  An assessment of a claimant's RFC is at the heart of Steps Four and Five of the sequential analysis done by the ALJ when determining whether a claimant can still work despite severe medical impairments.  An improper evaluation of the claimant's ability to perform specific work-related functions "could make the difference between a finding of 'disabled' and 'not disabled.'"  SSR 96-8p, at *4.

In Step Four, the claimant will be found not disabled if the Commissioner determines the claimant has the RFC to perform work

11 - OPINION AND ORDER

he has done in the past. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. § 404.1520(f); 20 C.F.R. § 416.920(f).

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any other work that exists in the national economy. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. § 404.1520(g); 20 C.F.R. § 416.920(g). Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 404.1520(g); 20 C.F.R. § 416.920(g).


## ALJ'S FINDINGS

In Step One, the ALJ found Plaintiff has not engaged in substantial gainful activity since June 27, 2006. Tr. 55.

In Step Two, the ALJ found Plaintiff has the following severe impairments: Paranoid Schizophrenia, and Post-Traumatic Stress Disorder (PTSD). Tr. 55.

In Step Three the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals a Listed Impairment in 20 C.F.R. Part 404, Subpart P,

12 - OPINION AND ORDER

Appendix 1.   Tr. 56.   Based on all of Plaintiff's impairments, the ALJ found Plaintiff has the RFC to perform simple, unskilled medium work that does not require intense concentration.   He should only have minimal contact with co-workers and only brief, superficial contact with the general public.   Any job he performs should be limited to routine, low-stress tasks that do not involve changes or adaptations, taking any initiative or independent decision-making, or making productions quotas and keeping pace with co-workers in a production line.   Tr. 60.

In Step Four the ALJ found these limitations preclude Plaintiff from performing any past relevant work.   Tr. 62.

The ALJ also found, based on the VE testimony, that Plaintiff is able to perform the requirements of representative occupations such as hand packager, industrial cleaner, and motel cleaner even though Plaintiff's limitations preclude him from performing the full range of medium-level work.   Tr. 63.

In Step Five, the ALJ found Plaintiff is not disabled and, therefore, is not entitled to benefits.   Tr. 64.


## DISCUSSION

Plaintiff contends the ALJ erred when he found Plaintiff was not disabled because the ALJ (1) did not give clear and convincing reasons for rejecting Plaintiff's testimony regarding the severity of his psychological impairments; (2) did not give

germane reasons for rejecting the lay-witness testimony of Plaintiff's mother; (3) rejected the opinions of treating psychiatrist, Nicholas W. Telew, M.D. and a treating nurse practitioner, who both found Plaintiff suffered from severe depression.  Plaintiff, therefore, requests the Court to remand this matter for further proceedings.

I.   **Plaintiff's Credibility**.

The ALJ found Plaintiff's credibility regarding the severity of his impairments was undermined by his "exaggeration of subjective complaints and functional limitations," which are inconsistent with the extent of his non-work-related activities such as attending sporting events, regularly attending church, feeding farm animals, and working on the family farm in addition to his "reluctance to work for fear that it would jeopardize his [claim]."  Tr. 62.  The ALJ also pointed out Plaintiff's sporadic work history before the alleged onset date of his disability.

A.   **Standards**.

In *Cotton v. Bowen,* 799 F.2d 1403, 1407 (9th Cir. 1986), the Ninth Circuit set out two requirements for a claimant to present credible symptom testimony:  The claimant must produce objective medical evidence of an impairment or impairments, and he must show the impairment or combination of impairments could reasonably be expected to produce some degree of symptom.  The claimant, however, need not produce objective medical evidence of

14 - OPINION AND ORDER

the actual symptoms or their severity.  *Smolen,* 80 F.3d at 1284.
If the claimant satisfies the above test and there is not any
affirmative evidence of malingering, the ALJ can reject the
claimant's pain testimony only if he provides clear and
convincing reasons for doing so. *Parra v. Astrue,* 481 F.3d 742,
750 (9th Cir. 2007)(citing *Lester,* 81 F.3d at 834)).  General
assertions that the claimant's testimony is not credible are
insufficient. *Id.*  The ALJ must specifically identify what
testimony is not credible and what evidence undermines the
claimant's complaints.  *Parra,* 481 F.3d at 750 (quoting *Lester,*
81 F.3d at 834).

**B. <u>Analysis</u>.**

There is not any evidence that Plaintiff is a malingerer.
The ALJ, therefore, was required to give clear and convincing
reasons for not crediting Plaintiff's testimony regarding the
severity of his impairments

**1.   Medical Treatment Records.**

a.   <u>Springfield Family Practice Group</u>.

In February 1999 Plaintiff was evaluated for
depression that had lasted for several months.  Plaintiff was
undergoing treatment at the time for gambling issues and moderate
depression after he had exhausted the limits on his credit cards.
Tr. 253.

In March 2004 Plaintiff was again evaluated for depression.  His wife had left him after he "came at her with a knife."  He was having difficulty with alcohol and "contemplat[ing] suicide by razor blades."  Tr. 251.  He was diagnosed with "severe chronic depression" associated with a "suicide attempt and ideation" and "vague paranoid behavior for some time."  Tr. 250.

In November 2005 Plaintiff had a psychotic episode and was prescribed Effexor, an antidepressant medication. Tr. 250.

In February 2006 Plaintiff complained of being depressed for several weeks.  Tr. 249.  He was diagnosed with "situational" moderate to severe depression.  Tr. 249.

     b.   Royal Avenue Crisis Shelter Program.

In April 2004 Plaintiff was admitted for three days of inpatient counseling after he claimed to have made repeated suicide attempts in the prior two months.  Tr. 234.  The most recent attempt was to hang himself from the Hayden Island Bridge.  Tr. 234.  He left after "treatment [was] considered complete" and he had found a place to live.  Tr. 234.

     c.   Sacred Heart Medical Center.

In June 2004 Plaintiff was admitted to Sacred Heart Medical Center after he attempted to commit suicide

following his conviction for menacing his wife and spending time in jail.  Tr. 319.  On MMPI-2 testing conducted by James M. Butcher, Ph.D., Plaintiff provided exaggerated responses to questions that invalidated the test either by conscious distortion/faking or because of a confused disoriented state caused by acute psychological disturbance or confusion.

When Plaintiff was discharged a week later, Dr. Telew diagnosed Plaintiff with Dysthymic Disorder, Alcohol Dependence, Adult Deficit Hyperactivity Disorder (ADHD), Borderline Personality Disorder, and moderate-to-severe psychosocial stressors.  Tr. 291.  Dr. Telew assigned Plaintiff with a GAF score of 35 (major impairment in several areas such as work or school, family relations, judgment, thinking, or mood). Tr. 291.

In October 2005 Plaintiff was again hospitalized after he complained that he heard voices.  Tr. 281.  He "present[ed] with paranoia after an acute ingestion of methamphetamine."  He was discharged with the expectation that he would get help with his "drug and alcohol problem."  Tr. 282.

Later in October 2005 Plaintiff was again brought to the emergency room by the Sheriff's Department for a mental-health evaluation.  Tr. 270.  Plaintiff did not appear intoxicated, and he was reasonably groomed and cooperative.  *Id*.

Three days later, Plaintiff was again in the

17 - OPINION AND ORDER

Emergency Room after using methamphetamine.  Tr. 266.  He was
more calm and cooperative than on previous visits, but he was
intoxicated and refused further drug testing even though he
agreed to seek drug treatment.  Tr. 267.

     d.  <u>Lane County Adult Corrections</u>.

     In January 2006 Plaintiff consulted with
psychiatrist Alan J. Cohn, M.D., who diagnosed Plaintiff with Bi-
Polar Disorder and suggested therapy might be the most effective
treatment.  Dr. Cohn also opined diagnoses of Pervasive
Development Disorder (PDD) and Post-Traumatic Stress Disorder
(PTSD) should be ruled out.  Tr. 241.

     e.  <u>Lane County Mental Health Clinic</u>.

     In March 2006, Plaintiff was enrolled in a Mental
Health Court Treatment Program.  Tr. 352, 371.  His initial
diagnosis was Psychotic Disorder NOS, r/o Substance-Induced
Psychosis, and r/o Psychotic Disorder due to a head injury."
Tr. 366.

     Plaintiff presented a history of rape and
molestation in early childhood followed by service in the United
States Navy that led to a general discharge because he failed "to
hold true to Corps values."  Tr. 365.  At the time he was hearing
"voices" of men and women telling him to be "a member of their
covert team."  Tr. 365.  Antidepressant medication that he had
been taking since he was 17 years old "mildly" relieved his

18 - OPINION AND ORDER

anxiety.  Tr. 365.  He had "numerous attempts of cutting himself, overdosing, and handling a gun with thoughts of killing himself." *Id.*  He also had a history of heavy drinking and methamphetamine use.  Tr. 365.

In April 2006 Jocelyn Bonner, M.D., assigned Plaintiff with a GAF score of 35.  Tr. 365.

In May 2006 Plaintiff was showing "good participation" in the program.  Tr. 357.  By July 2006 Plaintiff was doing "very well" and "succeeding in his new employment." Tr. 352.  Qualified Mental Health Professional Roger G. Kalman, MA, noted Plaintiff, "much to his credit," had "decided to pursue the employment path rather [than] disability."  Tr. 352.

In October 2006 Plaintiff completed the program. His discharge diagnosis was Psychotic Disorder NOS, R/O Substance-induced Psychosis, R/O Psychotic Disorder due to head injury," and Personality Disorder NOS.  Ruth E. Braun, Ph.D., noted Plaintiff successfully completed a diversion program in which he "participated well, had no drug tests that were positive, found employment, and dealt with housing issues." Tr. 350.  Nevertheless, despite the significant progress in Plaintiff's mental functioning, Dr. Braun assigned Plaintiff with the same GAF score of 35 that Dr. Telew previously assigned two years in earlier in June 2004 immediately after Plaintiff attempted to commit suicide and that Dr. Bonner had assigned

19 - OPINION AND ORDER

Plaintiff six months earlier when Plaintiff was still thinking of committing suicide.  Tr. 350.

     f.  <u>Clackamas County Mental Health</u>.

     From October 2006 through January 2011 Plaintiff received ongoing mental-health treatment.

     In October 2006 following an initial psychiatric evaluation by Laurie Baird, LCSW, Plaintiff was diagnosed with Psychotic Disorder NOS, Dysthymic Disorder, Cognitive Disorder, and Schizotypal Personality with alcohol and amphetamine abuse. Tr. 331.  He was assigned a GAF score of 50 (serious impairment in social, occupational, or school functioning).

     In November 2006 Nurse Practitioner Sandra McAllister, PMHNP, assigned Plaintiff with a GAF score of 40 (major impairment in work, school, or family relations, judgment, mood, or thinking).  Tr. 407.  That GAF score remained the same in March 2007.  Tr. 416.

     In January 2007 Plaintiff was experiencing "auditory hallucinations, command voices, threatening behaviors" when he was not on his medications and was using drugs.  Tr. 424.

     In May 2007 Plaintiff did "not feel ready to take on a job," but he was interested in exploring "part-time employment.  Tr. 432.

     In July 2007 Plaintiff had mood difficulties and "racing" and "good and bad" thoughts.  Tr. 433.  His "psychotic"

symptoms were "of concern" to LCSW Baird.  Tr. 433.

In October 2007 Plaintiff was showing "stress and frustration" and experiencing a "feeling of failure for not being able to successfully work."  Tr. 435.  There was "concern" that Plaintiff's ability to function was deteriorating.  Tr. 435.

In January 2008 Plaintiff was "frustrated with the job readiness classes," but the medications he was taking were "working well."  Tr. 439.

In February 2008 Plaintiff was "doing the best he's ever done" although he was still hearing "voices."  Tr. 441.

In July 2008 Plaintiff continued "doing really well and [was] spending more time out of his room."  Tr. 445.

In September 2008 Plaintiff realized "he can take small steps to achieve goals and make change, instead of looking at the end result/big picture and feeling overwhelmed about how to get there."  Tr. 453.

In November 2008, however, Plaintiff expressed concern about going to work in a vocational-rehabilitation program because "it might hurt his SSD appeal."  Tr. 456.

In December 2008 Plaintiff felt good about his progress and had a "a bright affect and more positive outlook."  Tr. 458.

In May 2009 Laurie Baird and Nurse Practitioner Timothy Holt both noted Plaintiff's GAF score had improved to 60

(moderate difficulty in social, occupational, or school functioning).
Tr. 539-40.

In May 2010 Plaintiff's GAF score was 57; *i.e.,*
Plaintiff was at about the same level of functioning as the year
before.  Tr. 531.

In January 2011 Plaintiff was working part-time with
people who understood" that he was unable to "handle too much."
Tr. 480

### 2.  Medical Consultation Records.

<u>Bill Hennings, Ph.D. - Psychologist</u>.
<u>Paul Rethinger, Ph.D. - Psychologist</u>.

In March 2007 Dr. Hennings reviewed Plaintiff's medical
records for the Commissioner.  He opined Plaintiff's "stories vary &
appear to be manipulation for his benefit."  Tr. 380.  Nevertheless,
he noted Plaintiff's diagnoses relating to personality d/o, psychotic
d/o, substance abuse, & depression have been fairly consistent
[diagnoses] by recognized sources."  Tr. 380.  Dr. Hennings opined
Plaintiff has mild restrictions in activities of daily living and
moderate difficulties in maintaining social functioning and
concentration, persistence, or pace.  Dr. Hennings also noted
Plaintiff could be subject to one or two episodes of decompensation
of extended duration.  Tr. 391.

Dr. Hennings further opined Plaintiff's understanding and
memory were not significantly limited; his ability to sustain
concentration, persistence, and pace was not significantly limited

22 - OPINION AND ORDER

except that he would have moderate limitations in carrying out detailed instructions; his ability to interact socially was not significantly limited except that he was moderately limited in his ability to interact with the general public and to get along with co-workers; and his ability to set realistic goals was moderately limited.  Tr. 395-96.

In May 2007 Dr. Rethinger concurred in Dr. Henning's opinion that the medical records reflect ongoing improvement in Plaintiff's mental health.  Dr. Rethinger specifically rejected the opinion of Dr. Braun that Plaintiff had an ongoing GAF score of 35 on the ground that such a score was inconsistent with Plaintiff's level of functioning based on Dr. Rethinger's review of those medical records.  Tr. 422.

**C.  <u>Summary</u>.**

The ALJ found Plaintiff was not credible on the grounds that the record reflects he was able to engage in certain physical activities on a daily basis, had a sporadic work history generally, and had expressed concern in November 2008 that his disability claim might be adversely impacted if he returned to work.

The medical record, however, also confirms Plaintiff had psychological impairments that significantly impacted his ability to engage in substantial gainful activity through at least November 2006 as reflected by GAF scores of 40 or below before and during the fall of 2006.  After that time, however, Plaintiff's GAF scores generally

23 - OPINION AND ORDER

improved to a level at which he might be expected to have only moderate difficulty in occupational functioning.  By January 2008 Plaintiff's medical records begin to reflect significant improvement in his mental health as a whole.

The Commissioner, in any event, asserts the Ninth Circuit has questioned the relevance of such GAF scores in determining a claimant's ability to engage in substantial gainful activity.  "The Commissioner has determined the GAF scale 'does not have a direct correlation to the severity requirements in [Social Security Administration's] mental disorder listings.'"  *McFarland v. Astrue*, No. 06-3554, 2008 WL 2875315, at *1 (9th Cir. 2008).  In *McFarland,* however, the Ninth Circuit held only that an ALJ's failure to address specific GAF scores does not constitute legal error:

> We find the ALJ's failure to address the three GAF scores specifically does not constitute legal error.  The ALJ's residual functional capacity (RFC) assessment took into account McFarland's mental impairments, *was not inconsistent with McFarland's three limited duration GAF scores, and was supported by substantial evidence in the record.*

*Id.* (emphasis added).

The Court concludes the GAF scores assigned by the several mental-health practitioners and the contemporaneous commentaries by treating medical practitioners as to those scores are relevant and constitute significant and substantial evidence that supports Plaintiff's disability claim even if they are not controlling.

24 - OPINION AND ORDER

*See* SSR 06-03p.  The GAF scores from all medical sources reflect
Plaintiff had mental-health impairments  before May 2006 that
significantly impaired his everyday functioning, including his
ability to engage in substantial gainful activity.  Moreover, the ALJ
did not give any clear and convincing reason for not crediting the
opinions of Drs. Telew and Bonner that Plaintiff's mental health at
the time rated a GAF score of 35, which reflected Plaintiff had a
major impairment in his ability to work.

On this record the Court concludes the medical treatment and
After June 2006, however, the medical reports generally show
Plaintiff exhibited gradual improvement in his mental health even
though there wasn't any consequent improvement in the GAF scores
assigned to Plaintiff until May 2009 when Plaintiff's GAF scores
increased to the 55-60 range.  Those scores reflect Plaintiff was
expected to exhibit only moderate symptoms and difficulties in
occupational functioning.

On this record the Court concludes the medical treatment and
examination records support Plaintiff's claim that as of June 27,
2006, the alleged onset of his disability, he suffered from severe
psychological impairments related to PTSD and Paranoid Schizophrenia,
which the ALJ found at Step Two, as well as Dysthymia (*i.e.,*
depression), which the ALJ did not find.

The Court also finds the ALJ did not provide any reason for not
crediting the opinions of treating psychiatrist Dr. Telew in June
2004 and treating physician Dr. Bonner in April 2006 in which they

25 - OPINION AND ORDER

assigned Plaintiff with a GAF score of 35.  Those scores support
Plaintiff's claims regarding the severity of his psychological
impairments during that time-frame; *i.e.*, as of June 2006.
Nevertheless, the ALJ did not provide any clear and convincing
reasons for rejecting that specific evidence and for failing to
consider it when determining whether Plaintiff was able to engage in
substantial gainful activity at that time.  Moreover, the medical
records from June 2006 through the end of 2007 reflect Plaintiff
continued to experience serious mental-health issues, including
psychosis.

The Court, however, also concludes Plaintiff's credibility as to
the ongoing severity of his impairments and their impact on his
ability to engage in substantial gainful activity after January 2008
is undermined by the medical evidence, which generally reflects a
steady improvement in Plaintiff's condition and an increasing ability
to cope with his psychological impairments.

Accordingly, the Court concludes the ALJ's reasons for rejecting
Plaintiff's testimony regarding the severity of his impairments after
January 2008 are, on this record, clear and convincing.

## II.  **Lay Testimony**.

Plaintiff contends the ALJ did not give germane reasons for
rejecting the lay testimony of Plaintiff's mother regarding the
extent of Plaintiff's psychological impairments.

26 – OPINION AND ORDER

**A.  Standards.**

Lay-witness evidence as to a claimant's symptoms "is competent evidence that an ALJ must take into account" unless he "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).

**B.  Analysis.**

The ALJ did not address evidence presented by Plaintiff's mother either at the hearing or in her Adult-Third Party Function Report. The Commissioner does not explain why such evidence was ignored, but he suggests no reasonable ALJ would credit such evidence because Plaintiff's testimony contradicts his mother's evidence that he spent most of his time in bed.  The Court disagrees with the Commissioner's characterization of the mother's evidence.  She wrote specifically that Plaintiff "gets up around 10 a.m. - floats through the house - goes back to bed - stays in bed most of the day - maybe 1-2 hours - prepares to go back to bed for night by 8 p.m."  The Commissioner urges the Court to conclude that "no reasonable ALJ, even while fully crediting [the lay evidence] could have reached a different disability conclusion."  The lay evidence, however, was probative of and germane to Plaintiff's mental state, and the ALJ erred when he did not address both the lay testimony and the lay written statement without providing legally sufficient reasons supported by substantial evidence in the record for doing so.

III. **Medical Providers' Opinions**.

Plaintiff asserts the ALJ erred when he rejected (a) Nurse Practitioner McAllister's November 2006 opinion that Plaintiff had a GAF score of 40, which reflected a serious impairment in occupational functioning, and (b) Dr. Telew's June 2004 opinion assessing Plaintiff's GAF score. As a result, Plaintiff contends the ALJ erroneously did not find Plaintiff's depression is a severe impairment.

The Court agrees with Plaintiff that the medical record as a whole supports the GAF scores assigned to Plaintiff by Dr. Telew in June 2004 and Nurse Practitioner McAllister in November 2006 and, in turn, supports his claim for SSI and DIB benefits based on his psychological impairments through December 31, 2007.

## REMAND

The remaining issue is whether this matter should be remanded for further proceedings or for the immediate payment of benefits.

The decision whether to remand for further proceedings or for the immediate payment of benefits generally turns on the likely utility of further proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000). The court may "direct an award of benefits where the record has been fully developed and where further administrative proceedings would serve no useful purpose." *Smolen*, 80 F.3d at 1292.

28 - OPINION AND ORDER

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel*, 211 F.3d at 1178. The court should grant an immediate award of benefits when

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Id.* The second and third prongs of the test often merge into a single question:  Whether the ALJ would have to award benefits if the case were remanded for further proceedings. *Id.* at 1178 n.2.

The medical record in this case reflects significant improvement has taken place in Plaintiff's mental health and outlook after January 1, 2008. The Court concludes the record is sufficient to establish that Plaintiff has been capable of engaging in substantial gainful activity since that date. The Court, therefore, concludes the medical evidence does not support Plaintiff's ongoing disability after December 31, 2007.

Accordingly, the Court concludes a remand for further proceedings to develop and/or to evaluate the medical record after December 31, 2007, is unnecessary.

## CONCLUSION

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for the immediate payment to Plaintiff of SSI and DIB that accrued from June 27, 2006, through December 31, 2007.

IT IS SO ORDERED.

DATED this 23rd day of July, 2012.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge


30 – OPINION AND ORDER